**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>       **v.**<br><br>**HERBERT BENDER,**<br><br>**Defendant.** | **No. 20-cr-248-CKK-ZMF** |

## REPORT AND RECOMMENDATION

Mr. Bender ("Defendant") has admitted to violating the terms of his supervised release. For the reasons set forth herein, the undersigned recommends that Mr. Bender receive a sentence of 10 months with no additional period of supervised release.

## I.    BACKGROUND

On July 1, 2024, the U.S. Probation Office filed a petition requesting that Judge Kollar-Kotelly issue a warrant and schedule a hearing on violation of supervised release because the Defendant assaulted a police officer on June 14, 2024, failed to notify his probation officer of the related arrest, repeatedly used controlled substances, and failed to attend substance abuse treatment. *See* ECF No. 33. On July 2, 2024, Judge Kollar-Kotelly ordered the Probation Office to issue a summons and schedule a hearing on violation. On that same date, Judge Kollar-Kotelly referred the matter to the undersigned for preparation of a Report and Recommendation. *See* ECF No. 34.

On July 15, 2024, the Defendant appeared before the undersigned. During this hearing, the Probation Office represented that the Defendant was pending trial in D.C. Superior Court for charges related to his June 14, 2024 arrest. The Probation Office and the government

1

recommended that the Court order the Defendant to comply with his condition of substance abuse treatment. The Defendant informed the Court that he had completed the initial part of the Pathways Program.[1] Through this program, the Defendant was training to become a welder, receiving weekly therapy treatment, and had the option to receive substance abuse treatment. The Court ordered the Defendant to seek substance abuse treatment through the Pathways Program and referred Defendant to a mentor from the Court's Reentry Program. The Court set a status hearing for July 29, 2024.

On July 29, 2024, the Probation Office informed the Court that the Defendant's urinalysis results were negative, and that the Defendant was still waiting to start substance abuse treatment since the Pathways Program had not yet provided a vendor. The undersigned commended the Defendant for remaining drug free. The Court set a next status hearing for August 12, 2024.

On August 12, 2024, the Probation Office reported that the Defendant remained drug free and was progressing with his reentry efforts. The Court set a next status hearing for October 21, 2024.

On October 21, 2024, the Defendant reported that he continued to participate in the Pathways Program and was waiting for the welders' union to accept him for full-time employment. The Defendant also informed the Court that he was participating in a program for substance abuse treatment three times per week. The Court set a next status hearing for January 8, 2025.

On January 8, 2025, the Probation Office reported mixed results with the Defendant's progress: the Defendant had returned a positive urinalysis test in mid-November, but a negative

---

[1] "The Pathways Program helps young adults ages 18 to 35 who are most at risk of being involved in gun violence. It is a training program that teaches important life and job skills to help participants make positive choices and prepare for success." *See Pathways Program*, D.C. Off. of Neighborhood Safety and Engagement (Dec. 18, 2025), https://perma.cc/L5NC-LX6T.

one in early December; and the Defendant had failed to report an arrest for an open container of alcohol.[2] *See* Probation Petition 2, ECF No. 37. The Defendant shared that he had completed the Pathways Program and was awaiting acceptance from the welders' union. In the meantime, the Defendant was working part-time at a library. The parties agreed to continue to trail the Defendant's Superior Court case. The Court ordered the Defendant to file a status report by July 1, 2025. The Defendant expressed his goals of maintaining his sobriety and gaining employment as a welder. The Probation Officer expressed optimism based on the Defendant's willingness to change and highlighted his productive rapport.

On or about June 6, 2025, law enforcement arrested the Defendant on new criminal conduct. *See* Probation Petition 2, ECF No. 38. The government charged the Defendant with possession of a firearm during a crime of violence and assault with a dangerous weapon. *See id.* The Defendant was held without bond in Superior Court. *Id.* at 4.

On June 20, 2025, the Probation Office filed a supplemental petition adding the Superior Court arrest as a new violation and requesting that Judge Kollar-Kotelly issue a warrant. *See id.* at 1–4. On June 23, 2025, Judge Kollar-Kotelly ordered the Probation Office to issue the arrest warrant and directed the undersigned to schedule a hearing on the new violation.

On June 30, 2025, the government filed a Joint Status Report informing the Court that the Defendant entered a guilty plea to Unlawful Possession of a Firearm (Prior Conviction) and Endangerment with a Firearm (Public Place) in violation of 22 D.C. Code §§ 4503(a)(1) and 4503.03. *See* Joint Status Report 1, ECF No. 40. On August 26, 2025, the Superior Court judge

---

[2] On February 4, 2025, the government dismissed this case. *See Bender*, 2024 CMD 005836, Dkt. Entry Date 02/04/2025 (*Nolle Prosequi*).

sentenced the Defendant to 27 months of incarceration with three years of supervised release. *See* Sentencing Memorandum (Def.'s Memo), ECF No. 43-1.

On September 8, 2025, the parties appeared before this Court. The parties agreed to set a Final Hearing on Revocation. On November 13, 2025, the Defendant filed a sentencing memorandum. *See id.* In it, the Defendant asked the Court to impose a term of imprisonment to be served concurrently with his Superior Court sentence or sentence him to a below-guideline sentence. *See id.* at 1. The Defendant argued that he made positive changes while on supervision. *See id.* at 4–5. He tried to stabilize his life and reintegrate into the community despite difficulties stemming from drug addiction, serious health conditions, and familial abandonment. *Id.* at 3–4.

On November 19, 2025, the parties appeared for a Final Hearing on Revocation of Supervised Release. The Defendant acknowledged the severity of the charged conduct in his Superior Court case, but explained that he acted in self-defense, as reflected in the government's charging document. He also described the poor sanitary conditions that he faced while at the D.C. Jail and asked the Court for leniency. The Probation Office asked the Court to find that the Defendant violated his supervised release conditions and sentence him to 24 months of incarceration. This recommendation was below the Sentencing Guideline range of 30 to 37 months.[3] The government joined in this request. The parties all agreed that no additional period of supervision was necessary, given that the Defendant would be under supervision in his Superior Court case for three years.

---

[3] The Defendant argues that the recommended Guideline range is 18-24 months of imprisonment, for a Grade B violation. *See* Def.'s Memo. at 2–3. This is likely based on the information provided in the first Probation Petition, entered on July 1, 2023. *See* Probation Petition 3–4, ECF No. 33. Nonetheless, the most recent Probation Petition, entered on June 19, 2025, correctly notes that the Guideline Provisions range for the more recent Grade A violation is 30-37 months of imprisonment. *See* Probation Petition 2, ECF No. 38.

## II.    **DISCUSSION**

Pursuant to 18 U.S.C. § 3583, a court may "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute." 18 U.S.C. § 3583(e)(3). In determining a sentence based on violation of supervised release conditions, a court considers the factors set forth in § 3583(a)(1), (a)(2)(B)–(D), and (a)(4)–(7). *See United States v. Byrd*, No. 21-cr-27, 2024 WL 3071088, *3–4 (D.D.C. June 4, 2024). These factors include: (1) the nature and circumstances of the offense and defendant's history and characteristics; (2) deterrence of criminal conduct; (3) protection of the public from further crimes of the defendant; (4) the need to provide defendant with educational or vocational training, medical care, or other correctional treatment; (5) the applicable sentencing guideline range for the offense and pertinent policy statements issued by the U.S. Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1), (a)(2)(B)–(D), and (a)(4)–(7).

The court should not consider "the need . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *See* 18 U.S.C. §§ 3583(e), 3553(a)(2)(A). In *Esteras v. United States*, the Supreme Court emphasized the need to "exclude retribution from the calculus . . . [and] consider the *forward-looking* ends of sentencing." 145 S. Ct. 2031, 2041 (2025).  While the Court cannot consider the nature of the offense for retribution purposes, it may inform the analysis of other factors, such as the need to protect the public. *See id.* at 2043. Ultimately, a "court shall impose a sentence sufficient, but not greater than necessary" to comply with these factors. 18 U.S.C. § 3553(a).

Here, the first factor—the Defendant's history and characteristics—cuts in favor of the Defendant. The Defendant was born to a heroin-addicted mother who transmitted a serious health

5

problem to the Defendant in utero. *See* Def.'s Memo. at 3. He was abandoned by his parents within the first two months of his life and passed through multiple households throughout his youth: his adoptive mother, until she died; to then his grandmother, until she died; and then his adoptive father. *See id.* The Defendant developed mental health and substance abuse issues at a young age while growing up in a neighborhood marked by poverty and crime. *See id.* at 3–4.

Despite these challenges, the Defendant successfully integrated back into the community until his recent arrest. He had stable housing, completed a job training program that qualified him for union membership, attended substance abuse treatment and mental health treatment, and cared for his young daughter. *See generally*, Def.'s Memo.

The second and fourth factors—deterrence of future crime and the Defendant's need for vocational training or medical care—weigh against imposing additional, unnecessary incarceration beyond the sentence already imposed by the Superior Court. "[I]mprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). The Defendant successfully completed the Pathways Program, though which he obtained welding training and work experience. *See* Def.'s Memo. at 6. Additional incarceration only delays the Defendant's reentry into the workforce and his ability to obtain treatment for his substance abuse issues.

"There is no indication of how additional punishment furthers deterrence." *United States v. Nwenze*, No. 19-cr-285, 2024 WL 4608867, at *4 (D.D.C. 2024). Rather, adding to the Defendant's period of incarceration simply serves to punish him more. But at what cost? Residing at the D.C. Jail poses serious health and safety threats to the Defendant. *See, e.g.*, *United States v. Hodge*, No. 25-cr-204, 2026 WL 380543, at *2 (D.D.C. Feb. 11, 2026) ("A recent audit of the D.C. Jail by the Office of the District of Columbia Auditor and Council for Court Excellence 'offers the most comprehensive review to date of facility operations, documenting a crisis marked

by rising deaths, structural decay, staff shortages, and inadequate medical and behavioral health care.'" (quoting Report by the Office of the District of Columbia Auditor and Council for Court Excellence (May 28, 2025), https://perma.cc/4SPB-XD9U)). The unduly harsh conditions at carceral facilities are an appropriate consideration when deciding the length of incarceration. *See e.g.*, *United States v. Abass*, 779 F. Supp. 3d 1, 9–10 (D.D.C. 2025) (discussing problems plaguing jails).

Despite this reality, the third factor—protection of the public—weighs in favor of additional incarceration. The Defendant's most recent violation arises from an altercation where he discharged a firearm several times after someone shot at him. This shooting took place in a parking area, outside of the Defendant's residence where he lived with his partner, daughter, and partner's children. *See* Def.'s Memo. at 2. The Defendant had a credible self-defense argument for his actions; still, his actions put the community at great risk. Furthermore, this most recent conviction demonstrates the Defendant's disregard for the prohibition against his possession of a firearm.

The fifth factor—applicable sentencing guideline range—cuts both ways. The guideline range for the Defendant's violation is 30–37 months of incarceration. See U.S.S.G. § 7B1.4(a). But this range is merely a policy statement. "[T]he Commission's purpose [in drafting the] Chapter VII policy statements [was] to preserve the courts' flexibility." *United States v. Hooker*, 993 F.2d 898, 901 (D.C. Cir. 1993). Thus, a court must "merely consider (i.e., reflect on, think about, deliberate, ponder or study) policy statements because Congress had not *require[d]* adherence to policy statements[.]" *United States v. Kenny*, 846 F.3d 373, 376 (D.C. Cir. 2017) (internal quotations omitted).

The Court commends the Defendant for taking responsibility for his actions as demonstrated by his guilty plea and his admission to the pending violations. The Court further commends the Defendant for his progress in his reentry plan, including stable housing and working towards a career in welding. The Court acknowledges the Defendant's sincere efforts towards sobriety and recognizes that fighting addiction is often a non-linear process. On the other hand, the Court is concerned by the Defendant's most recent conviction.

### III.    CONCLUSION

Given the above facts, the undersigned recommends as follows: a finding that the Defendant violated his conditions of release as stated in the July 1, 2024, January 8, 2025, and June 20, 2025 petitions and a sentence of 10 months of incarceration followed by no additional period of supervision.[4]

Such sentence should be served consecutively to his D.C. Superior Court sentence. Between the two cases, this would subject the Defendant to 37 months of imprisonment (27 months in the Superior Court and 10 months in the present case). That total would fall at the high end of the guideline range for a Grade A violation (*i.e.*, 30-37 months). Put another way, the recommendation of this Court could be characterized as a 37-month concurrent sentence.

---

[4] The parties are hereby advised that, under the provisions of Local Criminal Rule 59.2(b) of the U.S. District Court for the District of Columbia, any party may file written objections for consideration by the district judge within fourteen days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion to which objection is made and the basis for such objections. The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140, 144–45 (1985).

The Defendant will be subject to a lengthy period of supervision in his underlying Superior Court case. As both the government and Probation Office agreed, there is nothing to gain from dual supervision.


Date: May 22, 2026

_____
ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE